UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN LEE BEENBLOSSOM, ) | 1:09-CV-01141 GSA HC |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR WRIT |
| ) | OF HABEAS CORPUS |
| v. ) | |
| ) | ORDER DIRECTING CLERK OF COURT |
| ) | TO ENTER JUDGMENT AND TERMINATE |
| FRANCISCO JACQUEZ, Warden, ) | CASE |
| ) | |
| Respondent. ) | ORDER DECLINING ISSUANCE OF |
| ) | CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tuolumne, following his conviction by jury trial on May 25, 2007, of two counts of assault with a deadly weapon upon a peace officer (Cal. Penal Code § 245(c)), one count of misdemeanor assault on a peace officer (Cal. Penal Code § 241(b)), one count of evading an officer (Cal. Vehicle Code § 2800.2(a)), one count of resisting an officer (Cal. Penal Code § 148(a)(1)), and one count of driving on a suspended license (Cal. Vehicle

Code § 14601.2(a)). (LD[1] 3:2.) It was further found true that Petitioner suffered three prior prison terms (Cal. Penal Code § 667.5(b)), a prior serious felony (Cal. Penal Code § 667(a)(1)), and a prior serious strike felony (Cal. Penal Code § 667(b)-(i)). (LD 3:2.) On July 13, 2007, Petitioner was sentenced to serve a term of 21 years in state prison. (Peition at 1.)

Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). On August 26, 2008, the Fifth DCA affirmed the judgment in a reasoned opinion. (LD 3.) Petitioner then filed a petition for review in the California Supreme Court. (LD 4.) On November 12, 2008, the California Supreme Court summarily denied the petition. (LD 5.)

On June 30, 2009, Petitioner filed the instant federal habeas petition. Petitioner raises the following grounds for relief: 1) The prosecutor committed misconduct by repeatedly attempting to elicit improper testimony from a witness; and 2) The trial court deprived Petitioner of his constitutional right to a defense when it denied his request for an instruction on actions done by accident pursuant to CALCRIM No. 3404. Respondent filed an answer to the petition on November 16, 2009. Petitioner did not file a traverse.

## FACTUAL BACKGROUND[2]

On October 28, 2006, at approximately 9:50 p.m., Tuolumne County Sheriff's Deputy Jeff Gempler saw a Chevy Blazer drive by. The Blazer, driven by defendant, did not have functioning taillights. Gempler was in uniform and driving a marked patrol vehicle. He pulled in behind the Blazer and activated his overhead lights. Defendant did not pull the Blazer over. Gempler turned on more lights and then his siren. Defendant continued to ignore the signals to pull over.

As Gempler followed the Blazer, defendant drove the Blazer through a red light and accelerated. Gempler radioed the dispatch center that he was involved in a pursuit. Defendant continued to driving [sic] recklessly by going through stop lights and stop signs, speeding, and using both lanes to traverse corners.

Corporal Jerry McCaig of the Tuolumne County Sheriff's Department joined the pursuit in a secondary position. When McCaig joined the pursuit, his duty was to radio in the pursuit so the lead driver, Gempler, could concentrate strictly on the pursuit. Deputy Sheriff Victor Serrano also joined in the pursuit in the third position.

California Highway Patrol (CHP) Sergeant Steven Lampl became aware of the pursuit. He and other CHP officers met up with the pursuit. Because CHP officers are trained

---

[1] "LD" refers to the documents lodged by Respondent with his response.

[2] The factual background is taken from the opinion of the state appellate court and is presumed correct. 28 U.S.C. § 2254(e)(1).

in the "pursuit intervention technique" (PIT),[FN1] the sheriff's deputies relinquished their pursuit duties to the CHP. The CHP cars took the lead in the pursuit with the sheriff's deputies following. Defendant continued his reckless driving pattern.[FN2]

> FN1. The PIT maneuver places the officer's vehicle in contact with the side-rear portion of the pursued suspect's vehicle in order to push that vehicle into a spin and out of control. The objective is to end the pursuit by bringing the suspect to a halt.

> FN2. One CHP officer collided with a sheriff deputy as the CHP officer was attempting to join in the pursuit.

CHP Officer Eli Dillon was the driver and Officer Samuel Glucklich was the passenger in the CHP car that took over as the lead car in the pursuit of defendant. Lampl followed them in the next CHP car. Dillon was given authorization to perform the PIT maneuver, but under the rules he could not execute this maneuver until defendant's vehicle slowed to 35 miles per hour.

As the Blazer approached the intersection at Sunshine Road, there was a car in the left turn lane. Defendant made a left turn in front of this car toward Sunshine Road. As he did so, the Blazer slowed and Dillon prepared to attempt a PIT maneuver on the Blazer. Defendant then drove the Blazer in a sharp left turn back toward Dillon's patrol vehicle. The Blazer swerved to the left and was positioned right in front of where the patrol vehicle was traveling. It appeared to Dillon that defendant was trying to cut them off. Dillon had to brake and swerve and move his patrol vehicle as far to the left as he could to get out of the way. It appeared defendant was trying to strike the patrol vehicle with the Blazer. (These activities were the basis for the charges of assault with a deadly weapon upon a peace officer [count 1-Dillon; count 2-Glucklich].) It appeared to Dillon that, as he got into position to do the PIT maneuver, defendant made a more aggressive turn towards the patrol car.

Lampl saw the Blazer slow at the intersection of Sunshine and Mono Vista in preparation for a left turn. He described the path of the Blazer as swinging to the right to avoid cars; the Blazer was leaning very hard to the right then "button-hooked" back to the left. The lead unit (Dillon's car) applied its brakes and moved rapidly to the left. The Blazer had moved to the left and had occupied the space where the patrol car would have been if it had not taken evasive action.

The pursuit continued, and at some point the Blazer began sparking and began to slow. As the Blazer slowed, Dillon accomplished a PIT maneuver on the Blazer. The Blazer spun around and Dillon drove his car past the Blazer and lost sight of the Blazer.

Lampl testified that after Dillon performed the PIT maneuver, the Blazer accelerated and Lampl started to do a second PIT when the two vehicles collided. (Count 3-jury found defendant guilty of the lesser offense of assault on a peace officer [Lampl].)

Officers ran to the Blazer and broke out the windows after defendant reached into his sweater. Defendant was removed from the car. He resisted physically and also yelled and cursed at the officers. The driveline of the Blazer was broken.

(LD 3:2-4.)

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Tuolumne County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court

must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petition**

    **A.  Ground One**

In his first claim, Petitioner alleges the prosecutor committed misconduct by repeatedly attempting to elicit improper opinion testimony from a witness. Respondent alleges the claim is procedurally defaulted and without merit.

    *1.  Analysis of Claim by State Court*

This claim was presented on direct appeal to the Fifth DCA where it was rejected in a reasoned opinion. (LD 3:4-8.) Petitioner then presented the claim to the California Supreme Court where it was summarily denied. (LD 4, 5.) The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Fifth DCA rejected the claim as follows:

> During the questioning of Lampl at trial, the prosecutor asked about the incident at Sunshine when the Blazer turned into Dillon's patrol car. Lampl described how the Blazer moved rapidly to the left and occupied the space where the patrol car was headed. The prosecutor asked, "What did it look like to you happened?" Defendant objected based on speculation, and the court sustained the objection.
>
> The prosecutor then asked, "what did you see happen?" Lampl replied, "At that point, the manner in which the brake lights activated on the patrol car, the manner in which the driver of that patrol car had to slow down, and the manner in which he had to swerve to the left, coupled with the manner in which I saw the Blazer come to the left told me that the movement by the driver of the Blazer was deliberate."
>
> Defendant objected. The court sustained the objection and granted the motion to strike the response. The court advised the jury to disregard this response from Lampl.
>
> The prosecutor then asked Lampl if he said anything over the radio after he saw these actions. At defendant's request, a hearing was held at the sidebar. Defense counsel stated that Lampl's answer to the question was going to be that he radioed in that defendant had just committed an assault on the officers in the CHP patrol car. The prosecutor stated that this was an excited utterance and a spontaneous declaration admissible as an exception to the hearsay rule. The court found that the evidence would be an ultimate conclusion and it was not going to let Lampl offer his opinion on this subject.
>
> The prosecutor then asked Lampl if he called something out over the radio. He said he did. The prosecutor asked Lampl if his radio call was in response to having seen something. Lampl replied that it was. The prosecutor then asked what Lampl had seen that caused him to call out on the radio. Defendant objected, and the court overruled the objection.
>
> Lampl was asked what he had seen. Lampl replied, "What I saw was the braking

action, sudden movement to the left of the patrol car in response to what appeared as a deliberate action." Defendant immediately objected. The court sustained his objection and then ordered the response stricken. The court advised the jury again to disregard the response and instructed Lampl to simply answer the questions based on what he saw and to avoid any conclusions.

The prosecutor asked Lampl what he saw that caused him to say something on the radio. Lampl answered, "I saw the Blazer move rapidly to the left. I saw the patrol car brake and move to the left to avoid being hit by the Blazer. And I called to my dispatch center and said-." The court cut Lampl off at this point and told him he had sufficiently answered the question.

The questioning of Lampl continued. Lampl testified regarding his actions in attempting to perform the PIT maneuver near the end of the pursuit. The prosecutor asked Lampl what happened, and Lampl said he was trying to move in to perform the maneuver when the Blazer suddenly braked and swerved causing Lampl to slam on his brakes. The prosecutor asked what happened and Lampl replied, "I was not able to avoid the Blazer. It appeared the driver moved that vehicle deliberately."

A defense objection was sustained. Defendant made a motion for mistrial, which was denied. The court instructed the jury to disregard Lampl's response and ordered that it be stricken from the record. Questioning continued, and Lampl immediately answered the next question by describing the motion of the Blazer as deliberate. At this point the court stepped in and instructed Lampl not to offer the jury his opinions or conclusions but to tell the jury only what he actually saw.

As the questioning continued, the court interrupted and reread an instruction to the jury that it had previously read. The court said it was reading the instruction to refresh the jury's memory. The court instructed the jury that it was the judge of the facts and had the exclusive duty of determining the facts. In addition, the court instructed the jury that if the court sustains an objection to a question the jury must ignore the question, and if the witness answers a question and the court orders the testimony stricken from the record the jury must disregard that testimony and not use it for any purpose.

Defendant now claims that the above exchanges demonstrate that the prosecutor was deliberately attempting to elicit improper opinion testimony from Lampl and was following a predetermined strategy to offer Lampl's opinion, as a highly trained and experienced accident expert, that defendant acted willfully. Defendant claims that the prosecutor managed to smuggle Lampl's improper opinion to the jury three times and was thwarted in even more attempts. He contends the prosecutor clearly committed misconduct and the error requires reversal.

"A witness may not express an opinion on a defendant's guilt. [Citations.] The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.] 'Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.' [Citation.]" (*People v. Coffman* (2004) 34 Cal.4th 1, 77.)

Recognizing the above rule, the trial court sustained objections to the inappropriate answers of Lampl and ordered that his responses be stricken from the record. In addition, the court reminded the jurors on more than one occasion how to treat answers that the court had ordered stricken from the record.

Defendant now claims the prosecutor committed misconduct in asking the questions.

> "The law governing prosecutorial misconduct is well established. 'Conduct by a prosecutor that does not violate a court ruling is misconduct only if it amounts to "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury" [citations] or "is so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process" [citation].' [Citations.] A finding of misconduct does not require a determination that the prosecutor acted in bad faith or with wrongful intent. [Citation.] To preserve a claim of prosecutorial misconduct for appeal, a defendant must object and seek an admonition if an objection and admonition would have cured the harm. [Citation.]" (*People v. Kennedy* (2005) 36 Cal.4th 595, 617-618.)
>
> As pointed out by respondent, at no time did defense counsel object on the basis of prosecutorial misconduct. Defendant contends the absence of an objection is excused because the misconduct implicates an important constitutional right and any objection would have been futile.
>
> We fail to see a deliberate and egregious pattern of misconduct such that defendant's constitutional right to due process and a fair trial were implicated. The prosecutor asked questions properly, but the witness insisted on giving his conclusions even when appropriate questions were asked and even after being admonished by the court to answer only the questions that were asked and to not give his conclusions. This is not a case of prosecutorial misconduct such that an objection is excused.
>
> Nor would an objection based on prosecutorial misconduct have been futile; the court responded correctly to each of defendant's objections and on more than one occasion interjected to stop the witness from answering a question in an inappropriate manner.
>
> The failure to object and request an admonition based on prosecutorial misconduct forfeits the issue on appeal.
>
> In any event, we find that prejudice if any, was harmless. The court repeatedly instructed the jury to disregard the inappropriate answers of Lampl and told the jury it was the exclusive judge of the facts. The record provides us with no reason to believe that the jury disregarded these repeated instructions. In fact, the jury found the defendant not guilty of the greater offense of assault with a deadly weapon on Lampl but instead found defendant guilty of only an assault on Lampl. Thus the jurors were able to discern for themselves the facts without resorting to the inappropriate conclusions Lampl tried to put before them.

(LD 3:4-8.)

*2. Procedural Default*

Respondent alleges that Petitioner is procedurally barred from raising this claim because it was defaulted in the state courts.

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991); <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1989); <u>See</u> <u>also</u>, <u>Fox Film Corp. v. Muller</u>, 296 U.S. 207, 210 (1935). A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is

considered a denial of relief on independent and adequate state grounds. <u>Harris v. Reed</u>, 489 U.S. 255, 260-61 (1989). This doctrine of procedural default is based on the concerns of comity and federalism. <u>Coleman</u>, 501 U.S. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989). For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>Acosta-Huerta v. Estelle</u>, 7 F.3d 139, 142 (9th Cir. 1993); <u>Hunter v. Aispuro</u>, 982 F.2d 344, 347-48 (9th Cir. 1991). If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. <u>Hunter v. Aispuro</u>, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." <u>O'Dell v. Thompson</u>, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991); <u>James v. Kentucky</u>, 466 U.S. 341, 348-51 (1984). The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. <u>Fields v. Calderon</u>, 125 F.3d 757, 760 (9th Cir. 1997); <u>Calderon v. United States Dist. Court (Bean)</u>, 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

In this case, the appellate court rejected the claim first in accordance with California's contemporaneous objection rule, because the defense failed to object to the alleged prosecutorial misconduct at trial. As noted by Respondent, California's contemporaneous objection rule is consistently applied independent of federal law. <u>Melendez v. Pliler</u>, 288 F.3d 1120, 1125 (9th Cir.2002); <u>Vansickel v. White</u>, 166 F.3d 953, 957 (9th Cir.1999).

If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental

miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750, 111 S.Ct. 2456; Park, 202 F.3d at 1150. In this case, Petitioner has not shown that any external factor prevented defense counsel from objecting. In addition, Petitioner cannot demonstrate actual prejudice resulting from the failure to object. As pointed out by Respondent, the trial court repeatedly struck the inappropriate responses by Sergeant Lampl and instructed the jury to disregard them. Jurors are presumed to follow their instructions. Jones v. United States, 527 U.S. 373, 394 (1999). Further, the jury must have disregarded Lampl's comments because Petitioner was not found guilty of the greater offense of assault with a deadly weapon on Sergeant Lampl, but only of assault. (LD 3:8.) Finally, Petitioner has not demonstrated a fundamental miscarriage of justice will occur if the claim is barred from federal review. The miscarriage of justice inquiry is governed by the standard set forth in Murray v. Carrier, 477 U.S. 478 (1986). Murray requires a habeas petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 496. To satisfy Murray's "actual innocence" standard, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Id. Here, Petitioner makes no such showing of actual innocence. Accordingly, Petitioner is procedurally barred from bringing this claim.

### 3. Federal Standard and Review of Claim

A petitioner is entitled to habeas corpus relief if the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987), *quoting* United States v. Bagley, 473 U.S. 667 (1985). Any claim of prosecutorial misconduct must be reviewed within the context of the entire trial. Greer, 485 U.S. at 765-66; United States v. Weitzenhoff, 35 F.3d 1275, 1291 (9th Cir. 1994). The court must keep in mind that "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor" and "the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." Smith v. Phillips, 455 U.S. 209, 219 (1982).

U.S. District Court
E. D. California

10

In this case, the state court reasonably concluded the prosecutor's questions were not misconduct, but were entirely proper. It was the witness who repeatedly provided inappropriate answers. Defense counsel objected to those answers and the trial court sustained the objections. (RT[3] 393, 396, 403.) Additionally, the trial court instructed the jury to disregard the improper answers. (RT 393, 396, 403, 407-08.) Thus, the state court's determination was not unreasonable.

Even if prosecutorial misconduct is established, and it was constitutional error, the error is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict" or did not result in actual prejudice. Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); Thompson v. Borg, 74 F.3d 1571, 1577 (9th Cir.1996). Here, Petitioner cannot demonstrate that the alleged misconduct had a substantial or injurious effect because the jury did not find Petitioner guilty of the offense of assault with a deadly weapon on Sergeant Lampl. Therefore, the jury must have disregarded the officer's inappropriate conclusions. Thus, the state court rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law. In sum, the claim is procedurally defaulted, without merit, and must be denied.

**B. Ground Two**

Petitioner next alleges the state court violated his constitutional right to present a defense when it denied his request to instruct the jury with CALCRIM No. 3404 regarding accidental actions.

The proffered instruction read:

> The defendant is not guilty of assault on a police officer with a deadly weapon if he acted without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of assault on a police officer with a deadly weapon unless you are convinced beyond a reasonable doubt that he acted with the required intent.

(LD 3:8-9.)

Respondent contends the claim is without merit.

*1. Review by State Court*

This claim was also presented and rejected on direct appeal to the Fifth DCA. (LD 3:8-10.) Petitioner then presented the claim to the California Supreme Court where it was summarily denied. (LD 5.) The California Supreme Court, by its "silent order" denying review of the Fifth DCA's

---

[3]"RT" refers to the Reporter's Transcript on Appeal.

decision, is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The appellate court rejected the claim as follows:

> Defendant's theory for this instruction was that the collision "was not a willful [act]." The court said that is not an accident. Defendant argued that the sharp U-turn caused him to be out of control. The court responded. "That simply would negate willfulness. But willfulness and accident are not synonymous." The court refused to give the instruction.
>
> Defendant asserts the failure to give this instruction was error. We will assume, for the sake of argument only, that the failure to give this instruction was error. Assuming it was error, we find the error to be harmless even under the higher standard set forth in *Chapman*. (*Chapman v. California* (1967) 386 U.S. 18.)
>
> The jury was instructed that every crime requires proof of the union or joint operation of act and wrongful intent. The jury was told that in order to find defendant guilty of the crimes he is accused of committing, it must find that defendant not only committed the prohibited act but did so intentionally or on purpose and the act would be explained in the instruction for each crime.
>
> For the crimes of assault with a deadly weapon on a peace officer and the lesser included crime of assault on a peace officer, the jury was told that defendant must have done the act willfully. The jury was instructed, "Someone commits an act willfully when he or she does it willingly or on purpose."
>
> Defendant was allowed to present evidence and argue his theory that he did not intend to swerve into the path of Dillon's patrol car and merely lost control because of the sharp turn he had executed.
>
> The instructions as given clearly sufficed to cover the principle that if defendant's actions were accidental they were not intentional, on purpose, or willful and the jury could not convict him of the assault charges. If the jury believed that defendant swerved into Dillon's car as a result of losing control of his car, the instructions required them to conclude that his actions were not willful and the jury would have acquitted defendant. The accident instruction did not offer anything beneficial to defendant's defense beyond what was already clear in the instructions as given.

(LD 3:8-10.)

*2. Federal Standard and Review of Claim*

In general, challenges to jury instructions are issues of state law and are not cognizable in a federal habeas corpus action. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury

instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982), *citing* Henderson v, Kibbe, 431 U.S. 145, 154 (1977).  Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.  Id. In addition, the Court notes that Petitioner's burden is "especially heavy" with this claim, because "[a]n omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

In this case, as discussed by the appellate court, Petitioner argued that his act of turning his vehicle into a sharp U-turn caused him to lose control. He contends that this accidental loss of control caused his vehicle to turn into the path of the officer's vehicle. Therefore, he argues, the jury should have been instructed on "accident." Had they been so advised, Petitioner claims they would have understood that they could not find him guilty of assault beyond a reasonable doubt if they concluded the collision was an accident.

It is clear Petitioner is not entitled to federal habeas relief on this claim. As discussed by the appellate court, even assuming the failure to give this instruction was error, it was entirely harmless. Petitioner presented evidence and argued to the jury that his act of swerving into the officer's path was not done purposefully, but rather because he merely lost control of his vehicle when executing the sharp U-turn. The instructions informed the jury that in order to find Petitioner guilty of assault, it had to find he acted willfully. ($CT^4$ 121, 123.) The jury was further advised that "[s]omeone commits an act willfully when he or she does it willingly or on purpose." (CT 121, 123. ) Clearly

---

[4]"CT" refers to the Clerk's Transcript on Appeal.

then, the jury understood it could not find Petitioner guilty of assault unless it concluded Petitioner willfully directed his vehicle into the path of the officers. Therefore, the instruction on accident would not have offered anything beneficial to Petitioner but would have been cumulative of the instructions on assault. Accordingly, the state court determination of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law. This claim must also be denied.

### IV. Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than

1 the absence of frivolity or the existence of mere good faith on his . . . part." <u>Miller-El</u>, 123 S.Ct. at
2 1040.
3     In the present case, the Court finds that reasonable jurists would not find the Court's
4 determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or
5 deserving of encouragement to proceed further.  Petitioner has not made the required substantial
6 showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a
7 certificate of appealability.

**ORDER**

    Accordingly, IT IS HEREBY ORDERED:

1) The petition for a writ of habeas corpus is DENIED WITH PREJUDICE;

2) The Clerk of Court is DIRECTED to enter judgment for Respondent and terminate the case; and

3) The Court DECLINES to issue a certificate of appealability.

    IT IS SO ORDERED.

    Dated:   **March 10, 2010**                              **/s/ Gary S. Austin**
                                                                                   UNITED STATES MAGISTRATE JUDGE